**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| VICTOR JESUS VIZARRAGA SANCHEZ, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Case No. CIV-26-547-R |
| MARKWAYNE MULLIN, et al., | ) ) | |
| Respondents. | ) | |

## REPORT AND RECOMMENDATION

Petitioner Victor Jesus Vizarraga Sanchez, a noncitizen detainee in the custody of the U.S. Immigration & Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus. Doc. 1. United States District Judge David L. Russell referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). This Report and Recommendation addresses Petitioner's Emergency Motion to Enjoin Transfer and for Temporary Restraining Order ("Motion"). Doc. 16. For the reasons stated below, the undersigned recommends the Court **DENY** Petitioner's Motion.

## I.      Background

On March 19, 2026, Petitioner filed his Petition, which, among other things, alleges he suffers from "serious and chronic medical conditions" requiring ongoing medical care and had recently undergone heart surgery and brain surgery while under guard by immigration authorities. Pet. at 26-28. Petitioner alleges his detention violates the Fifth Amendment due to these medical conditions and "immediate release is the only constitutionally adequate remedy." *Id.* at 29-31. On March 20, 2026, the matter was

referred to the undersigned.     Doc. 5.     On the same day, the undersigned ordered Respondents to respond to the Petition not later than March 27, 2026.  Doc. 6.  In the Order for Response, the undersigned directed Respondents to "file written notice at least seventy-two hours before removing, transferring, relocating, or otherwise moving Petitioner," *Id.* at 2, to keep track of Petitioner's location during the pendency of these proceedings.  On March 27, 2026, Respondents timely filed a Response.  Doc. 10.  On March 31, 2026, Petitioner filed a Motion for Preliminary Injunction seeking release during the pendency of the habeas proceedings due to his medically vulnerable state.  Doc. 13.  On April 3, 2026, the undersigned set an expedited briefing schedule for that motion, which has not been completed.  Doc. 14.

On April 3, 2026, Respondents filed a Notice informing the Court that "DHS/ICE intends to transfer and/or remove Petitioner after at least seventy-two (72) hours have passed."  Doc. 15.  On April 6, 2026, Petitioner filed his Motion requesting "this Court enjoin any transfer unless and until Respondents demonstrate that his serious medical needs will be adequately addressed and that the receiving facility is equipped to provide appropriate and sufficient medical care."  Doc. 16 at 2.  On the same day, the Court ordered Respondents to respond to the Motion and include additional factual information about Petitioner's scheduled transfer, including (1) the date of his transfer, (2) the location where he is being transferred, and (3) whether the purpose of the transfer is related to his medical conditions.  Doc. 18 at 1.  Respondents responded timely, arguing (1) the Court does not have jurisdiction to grant Petitioner's Motion and (2) Petitioner has not established entitlement to the extraordinary relief requested.  Doc. 21.  Respondents also stated:

2

"Petitioner is currently being transferred from the Diamondback Detention Center to the Prairieland Detention Center in Anson, Texas for the sole purpose of removal" to Peru on April 9, 2026, and he "has received medical clearance for his removal flight."  Doc. 21 at 2 (quoting Declaration of ICE Officer Torres) (citation modified).  Petitioner did not file an optional reply by the Court's deadline of April 9, 2026.  The Motion is now at issue.

## II.    The Court does not have jurisdiction to grant the Motion.

Federal law strips federal district courts of jurisdiction to consider "any cause or claim by or on behalf of any alien arising from the decision or action by [the Department of Homeland Security ("DHS")] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g).  In the Tenth Circuit, a court must review whether a habeas petitioner's claims are "connected directly and immediately with a decision or action by the Attorney General" to commence proceedings, adjudicate cases, or execute removal orders.  *Tsering v. U.S. Immigr. & Customs Enf't*, 403 F. App'x 339, 343 (10th Cir. 2010).  Respondents argue "if Petitioner's Motion was granted, it would in effect enjoin Petitioner's upcoming removal to Peru," which "directly relate[s] to decisions to execute removal orders."  Resp. at 6-7 (citation modified).  The undersigned agrees. *See Olola v. U.S. Att'y Gen.*, No. 18-CV-00058, 2018 WL 11446892, at *3 (D. Colo. Feb. 22, 2018) ("Federal law unambiguously strips federal district courts of jurisdiction to stay or enjoin an alien's removal." (citation modified)); *see also, e.g., Makuey v. Scott*, No. 2:26-CV-00632, 2026 WL 925647, at *4 (W.D. Wash. Apr. 6, 2026) (holding the court lacks jurisdiction to stay petitioner's removal under § 1252(g)); *Hernandez Llanes v. Warden, Fla. Soft Side Det. Ctr.*, No. 2:26-CV-1030, 2026 WL

3

925615, at *2 (M.D. Fla. Apr. 6, 2026) (same).  Accordingly, § 1252(g) strips the Court of jurisdiction to consider Petitioner's Motion.

In addition, under 8 U.S.C. § 1252(a)(2)(B)(ii), "no court shall have jurisdiction to review any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."  *Id.* (citation modified). Respondents argue Petitioner seeks an order enjoining transfer, but "the decision as to the appropriate place for detaining noncitizens is a statutorily defined discretionary power" and in the sole discretion of the Secretary of DHS.  Resp. at 5.  Again, the undersigned agrees.  Under 8 U.S.C. § 1231(g)(1), which governs noncitizens like Petitioner who have a final order of removal, ICE "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."  The Tenth Circuit has confirmed "the Attorney General is mandated to arrange for appropriate places of detention for [persons] detained pending removal."  *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding in a civil rights lawsuit "a district court has no jurisdiction to restrain the Attorney General's power to transfer [ICE detainees] to appropriate facilities by granting injunctive relief").  Accordingly, § 1252(a)(2)(B)(ii) also bars judicial review of Respondents' decision to remove Petitioner or transfer him to another ICE facility pending removal.  *See, e.g., Lway Mu v. Whitaker*, 18-cv-06924, 2019 WL 2373883, at *5 (W.D.N.Y. June 4, 2019) (citing § 1231(g)(1) and concluding "it does not have the authority to dictate to DHS where Petitioner should be housed"); *Olola*, 2018 WL 11446892, at *4 (finding § 1252(a)(2)(B)(ii) and § 1231(g) preclude judicial review of

4

respondents' decision to transfer a noncitizen and "decisions to transfer an alien from one location to another are within the discretion of the Attorney General and therefore may not be reviewed or enjoined by the federal district courts").

Therefore, the undersigned concludes the Court does not have jurisdiction to enjoin Petitioner's removal to Peru or transfer to another ICE facility to effect his removal.

**III.    Petitioner has not established entitlement to the relief requested.**

Even if the Court had jurisdiction to enjoin Petitioner's transfer and removal, he has not established he is entitled to a temporary restraining order.  "A party seeking a temporary restraining order or preliminary injunction must show '(1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that the injunction is in the public interest.'"  *Padres Unidos de Tulsa v. Drummond*, 785 F. Supp. 3d 993, 999 n.4 (W.D. Okla. 2025) (citing *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010)) (citation modified).  The likelihood-of-success and irreparable-harm factors are "the most critical" in the analysis.  *Rocky Mountain Gun Owners v. Polis,* 121 F.4th 96, 112 (10th Cir. 2024).  And the third and fourth factors "merge" where, like here, the government is the opposing party. *Id.*

**A.      Likelihood of success on the merits**

Petitioner asserts he is "likely to succeed on the merits" because he "is entitled to conditions of confinement that do not amount to punishment and that meet constitutional standards of due process."  Doc. 16 at 6.  He argues "proceeding with the transfer of a medically fragile detainee without ensuring that his serious medical needs will be

5

adequately addressed" "demonstrates deliberate indifference to a substantial risk of serious harm." *Id.* (citation modified). So, according to Petitioner, "proceeding with transfer under these circumstances is likely unconstitutional." *Id.* (citation modified). However, Petitioner fails to address how any of this shows he is likely to succeed on the merits of his Petition.

In his Petition, Petitioner argues his detention violates due process because he has not been given "any individualized determination that his continued confinement is necessary." Pet. at 30. Notably, Petitioner was ordered removed on January 7, 2026. Doc. 1-2 at 2. His appeal was dismissed by the BIA on February 27, 2026. *Id.* at 2. An order of removal becomes final "upon dismissal of an appeal by the Board of Immigration Appeals [("BIA")]." 8 C.F.R. § 1241.1(a). Petitioner's order of removal therefore became final on February 27, 2026.[1] He is now subject to 8 U.S.C. § 1231, which governs the "detention and removal of aliens ordered removed." Section 1231(a) dictates "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days," during which time "the Attorney General shall detain

---

[1] Petitioner's BIA appeal was "summarily dismissed" as untimely. Resp. at 5. According to the removal order, Petitioner's appeal was due February 6, 2026, but was not filed until February 9, 2026. *Id.*; *see also* Doc. 10-4. Petitioner contends he underwent surgery on January 26 and 28, 2026, which impacted his ability to timely appeal the removal order that he is attempting to challenge. Pet. at 28; Reply at 6-7. However, Petitioner's intention to continue to challenge the removal order does not change the fact that it is now a final order of removal and Respondents can now remove him. Rather, if Petitioner seeks to stay his removal pending further proceedings, he would need to seek an administrative stay of removal from DHS or from the relevant Court of Appeals. *See* 8 C.F.R. § 1241.6 (governing administrative stay of removal); 8 U.S.C. § 1252 (governing judicial review of orders of removal).

the alien." This "removal period" begins "the date the order of removal becomes administratively final." *Id.* § 1231(a)(1)(B)(i).[2]

As such, any argument that Petitioner is entitled to a bond hearing or release from detention during the pendency of his removal proceedings, such as under § 1226(a), is not applicable to a noncitizen, like Petitioner, who has a final order of removal. *See Castillo v. De Andra Ybarra*, No. CIV 25-1074, 2026 WL 370497, at *44 (D.N.M. Feb. 10, 2026) ("Once the Petitioners receive a final order of removal, the United States ceases to detain the Petitioners or put them on bond under § 1226(a), but instead they transfer to § 1231's statutory authority. At that time, the Court loses jurisdiction to hear the habeas petitions for release under § 1226(a), because the habeas petitions will be moot.").

While Petitioner acknowledges the BIA dismissed his appeal and he is now subject to an administratively final order of removal, he argues without case citations that "continued detention is unconstitutional regardless of the statutory authority invoked." Pet. at 30. Petitioner doubles down on this argument in his Reply asserting, again without case citations, "the legality of his detention remains a live controversy" because he never received a bond hearing and Respondents "cannot evade judicial review by relabeling detention authority after the fact." Reply at 3. He further argues "the Court may review the legality of detention notwithstanding § 1231" and "Respondents' reliance on § 1231 does not foreclose relief." *Id.* The undersigned disagrees. Respondents have not

---

[2] If the removal order is judicially reviewed and if a court orders a stay of removal, the removal period begins on the date of the court's final order. 8 U.S.C. § 1231(a)(1)(B)(ii). Petitioner has not alleged there is a court-ordered stay of his removal.

"relabeled" Petitioner's detention.  Rather, during his detention Petitioner became subject to a final order of removal, which necessarily re-classified him from a noncitizen currently undergoing removal proceedings—governed by § 1226—to a noncitizen subject to a final order of removal—governed by § 1231.  Thus, because Petitioner is not entitled to any individualized determination of his detention because he is within the 90-day mandatory detention period for noncitizens subject to a final order of removal.  The undersigned, therefore, concludes Petitioner is not likely to succeed on the merits of his due process claim asserting he is entitled to such an individualized determination.[3]  Accordingly, this factor weighs heavily in favor of denying the Motion.

### B.    Likelihood of irreparable harm

Petitioner alleges transfer "creates a substantial risk of further compromising Petitioner's already inadequate and inconsistent medical care, as Respondents have provided no assurance that his treatment will be stabilized, improved, or even maintained during or after transfer."  Doc. 16 at 4.  Petitioner further argues where the government's conduct "exposes a civil detainee to a substantial risk of serious medical harm, such conditions may rise to the level of unconstitutional punishment."  *Id.* at 5 (citing *Basank v.*

---

[3] Petitioner's Motion does not address the likelihood of success on the merits of his INA or Administrative Procedures Act ("APA") claims.  However, the undersigned concludes he is not likely to succeed on the merits of those claims either.  *See, e.g., Carbajal v. Holder*, 43 F. Supp. 3d 1184, 1188 (D. Colo. 2014) ("Applicant's claims challenging his mandatory detention without an individualized bond hearing during the pre-removal period now are moot because the Board of Immigration Appeals dismissed his administrative appeal."); *Trump v. J. G. G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J. concurring) (noting that a claim cannot be brought under APA when habeas corpus is the proper vehicle).

8

*Decker*, 613 F. Supp. 3d 776 (S.D.N.Y. 2020), *Malam v. Adducci*, 459 F. Supp. 3d 867 (E.D. Mich. 2020), and *Grant v. Decker*, No. 20 CIV. 2946 (AKH), 2020 WL 3402445, at *1 (S.D.N.Y. June 19, 2020)). However, these cases are factually distinguishable and do not involve petitioners governed by § 1231 with a final order of removal and immediate plans by the government for removal.[4] Further, Respondents assert Petitioner has been medically cleared for his removal. Doc. 21 at 2.

The undersigned acknowledges Petitioner's treatment while in Respondents' custody—as alleged in his filings—is certainly concerning. Petitioner is subject to a final order of removal and is scheduled to be removed from the country soon. His planned transfer is intended to effect that removal. Petitioner fails to provide a legal and factual basis to justify preliminary or habeas relief based on his alleged harm with medical conditions in light of his final removal order, medical clearance, and imminent plans for his removal. Accordingly, this factor also weighs in favor of denying the Motion.

### C.    Balance of equities and public interest

Petitioner argues "the public interest is served by ensuring that individuals in government custody receive constitutionally adequate medical care" and "preventing actions that pose a substantial risk of serious harm to detainees is firmly in the public

---

[4] Even if petitioners in these cases did have final orders of removal, the cited cases involved early risks of COVID-19 in ICE detention facilities for medically vulnerable detainees. These cases did not involve a detainee, like Petitioner, who has a final order of removal, was medically cleared after surgery, and is now scheduled for transfer and removal.

interest." Doc. 16 at 7. However, these allegations do not outweigh the two previous factors, which weigh heavily in favor of Respondents.

## IV.    __Recommendation and Notice of Right to Object__

For the foregoing reasons, the undersigned recommends that the Court **DENY** Petitioner's Emergency Motion to Enjoin Transfer and for Temporary Restraining Order, Doc. 16. The parties are advised of their rights to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of Court not later than **April 14, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **April 16, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation does not dispose of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 10th day of April, 2026.

_____
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE